## M. M. BRIEN *vs.* JOHN HARRIMAN & others.

### October Term, 1873.

PARTNERSHIP—DISSOLUTION.—The impossibility of carrying on a joint business profitably upon the basis of the articles of agreement, is sufficient to authorize either party to demand a dissolution or rescission.

SAME—CASE IN JUDGMENT.—Where, therefore, the agreement between complainant and defendants was that the latter should work the farm of the former for five years, but expressly limited the contributions of each to the business below what, in the event, was absolutely necessary to its successful prosecution, equity will decree a dissolution at the instance of either.

SAME—DAMAGES.—In such case, neither party is entitled to damages for the personal derelictions of duty by the other, so long as the business is allowed to continue.

RECEIVER—PARTNER.—A partner, or co-owner, who is appointed receiver upon his own *ex-parte* application, is not entitled to compensation for his services as such.

*M. M. Brien*, for complainant.
*Goodlett & Bradford*, for defendants.

THE CHANCELLOR :—On the 7th December, 1869, complainant and the defendants, Harriman and Coleman, entered into written articles of agreement "to carry on a farm, milk dairy, orchard, etc.," for a period of five years with the privilege of ten. Complainant was to furnish the land, about 124 acres near Nashville, two work horses, one two-horse wagon, one one-horse cart, one milk wagon, and from 10 to 20 milk cows, or more if thought best. Complainant was also to furnish fruit tree slips and vines to plant, plank, nails and rails to repair the fencing. The defendants, on their part, were to plant the trees and vines, clear up the farm, repair fences, feed the stock on the place, milk the cows, "furnish all the labor, raise, sell and market everything that is raised or made on the place," and they were to have half of everything made, and complainant other half. On the termination of the agreement, complainant was to have back his cattle, stock, and everything put in by him, wear and tear excepted. The defendants were to furnish all other necessary work-stock and tools, and to have back the same at the termination of the agreement. They were not to cut or use any of the green timber, but to furnish their own fire wood. The parties were to raise a few hogs on the place in partnership. Chickens, turkeys and ducks were to be raised in partnership. There were some other stipulations in regard to the kind and character of work, not material to be noticed.

The defendants went into possession of the place early in the year 1870, and seem to have discharged for some months at least their part of the agreement to the satisfaction of the complainant, or at any rate without complaint on his part.

A number of cows were furnished in the spring of that year by complainant, and an effort seems to have been made to establish a dairy, but not with much success. In the fall of that year complainant took away one of the work horses he had furnished, "after crop time," he says, and by the consent of defendants, if not request, and carried the animal to his farm in DeKalb county. He admits that he never returned the animal, but says he was ready to do so upon request, but defendants never made the request. There was some attempt at dividing the farm produce during the year, but the division was not satisfactory to complainant. The result for the year was not profitable to the parties, and the next year still less so. The defendants, instead of working the farm as was manifestly contemplated by the agreement, rented out parts of it, cultivated a part, and, it seems, worked out on other places to some extent. The whole scheme proved abortive, and the undertaking a losing one.

On the 30th of August, 1871, this bill was filed for a rescission of the contract, and the farm, and all that was on it were attached, and, by order of the court, placed in the hands of complainant as receiver, who proceeded to act as such, returning an inventory of effects, and disposing of the same to the best advantage. Since then, the complainant has retained possession of the land.

Both sides have, as is usual in cases like the present, displayed a good deal of feeling, and gone to unnecessary trouble and expense in taking testimony. The case presents no difficulties whatever, either of fact or law. The pleadings alone would, perhaps, have enabled the court to determine the rights of the parties; and certainly it was not necessary to go outside of the depositions of the complainant and one of the defendants. The parties entered into a contract to run a farm for their common benefit for five years, *the stipulations expressly limiting the contributions of each contracting party.* It required no prophet to foresee that success in such an undertaking was only possible by a continuous run of profit from the start. The least disaster must

necessarily end the venture, because the articles contain no provisions for such a contingency.    By the contract, the stock was to be " fed on the place," that is to say, by the produce of the farm.  The year 1870 proved to be a very dry year, and the meadows relied on for provender, were burnt up, and the contract contained no provision for purchasing seed and re-sowing.  The cows speedily went dry for want of proper provender.  This is a contingency not provided for ; there is no profit, but a loss, and neither party is either willing, or in fact, bound to advance the necessary funds to tide over this temporary back-set ; both parties become dissatisfied, and both parties violate the agreement.  The complainant admits that he took off one of the work horses which he had bound himself to furnish, at the end of the first season, and never returned it.  He also took off some of the stock, and seems to have insisted upon a division of farm produce and stock in kind, although the articles of partnership expressly provide that the defendants were to "raise, sell, and market everything."    On the other hand, the defendants, finding that they could not run the farm profitably, violated the agreement, by renting out portions of it, and working themselves elsewhere than on the land.  Each party having violated the contract, either was entitled to a rescission as early as the beginning of the year 1871.

But if it had been otherwise, and, as each side contends against the other, the violation had been by one side only, the result would have been the same.  *The utter inability to carry on the business profitably, upon the basis of the articles of agreement,* is a well recognized ground for the dissolution of a partnership.  *Waters* v. *Taylor*, 2 V. & B. 299 ; *Griswold* v. *Waddington*, 16 J., 438, 491.  This point was, upon full argument and review of the authorities, decided before the war by our Supreme Court in the hotly contested, but unreported, case of *Ledbetter & Bostick* v. *Brien*, which was a bill filed to dissolve a partnership engaged in the iron business, because of the want of funds to carry it on.  The

civil law, from which the English law of partnership is de-
rived, recognizes this contingency, "*quia conditio quædam,.
qua societas erat coita, ei non præstatur*. Dig. 17, 2, 14.

The complainant is, therefore, clearly entitled to a rescis-
sion of the contract with the defendants. But he is mis-
taken in supposing that he is entitled to damages for the
breach of the contract by the defendants, either generally,.
or in any of the particulars insisted upon in argument. There
have been such breaches of contract on both sides as proba-
bly preclude either from insisting upon, even if he could
show, special damage. But it is not necessary to decide
this point. Even if it be, as claimed by the complainant,
that the breaches were on the side of the defendants only,
it would make no difference. The failure was in the con-
tract itself, and the defendants can scarcely be blamed for
doing that to which they were driven by necessity. Having
no means to supply the losses of 1870, and not being required
by the contract to furnish such means if they had them,
and the complainant refusing or not offering to furnish
any, they could not do otherwise than rent the land, and
find work elsewhere to support their families. It was a
breach of the contract undoubtedly, and gave the complain-
ant a right to insist upon its rescission at once. If he neg-
lected to do it, such neglect did not prevent him from after-
wards insisting upon a dissolution by reason of the contin-
uous breach but it deprived him of the right to claim
damages. There is no more ground for charging either
party with special damages in this case, than in any case of
partnership which has continued after neglect of duty, or
violation of the terms of agreement, by one of the partners,
and the business has proved unprofitable, and each member
tries to throw the blame upon the other. Each member of
a firm is entitled to a dissolution, or rescission of the articles
of partnership, whenever there has been a positive breach of
those articles. But if he neglects to ask for a rescission it is
a condonation of the act, because he finds it to his interest to.
continue the partnership, notwithstanding the breach, rather

than to insist upon his legal rights.   It is obvious that every litigation over the settlement of a partnership, would degenerate into a struggle for damages for supposed misconduct of the parties, if the law were otherwise.   Unless the act is wilful and malicious, done with the intention to injure, the firm must bear the loss occasioned by the oversight, idleness, or want of judgment of the individual members.   And the same principle must govern any joint contract in the nature of a partnership.

The contract in this case will be rescinded as of the date of filing the bill.   Each side will be entitled to the property put upon the place by that party, according to the contract. The agreement provides that the complainant was to have back, at the termination of the agreement, everything put in by him, "wear and tear excepted."   I presume this amounts to a stipulation that the defendants will return such things in good condition, wear and tear excepted.   The complainant is, therefore, entitled to have this condition complied with.   There is some proof made by the complainant himself, to show that some of these articles were badly, and, as he seems to think, intentionally damaged.   There is nothing to couple the defendants with such injury, but the complainant may have the matter inquired into, if he sees proper, at the risk of paying the costs of the inquiry.   There will be a reference to take all necessary accounts to ascertain the profit or loss of the venture, and how the same should be borne.   An account will also be taken between each contracting party and the partnership, to ascertain the share of each in the profit or loss.   An account will also be taken with the receiver, in which he will be charged with all such effects as came, or might have come to his hands by reasonable diligence, and allowed all just credits, but no allowance for services.   Being a party to the contract, and a party in interest, he is not entitled to such allowance.   It was an unusual order to appoint him, and can only be sustained upon the implied condition that he would discharge the duties devolving upon him free of cost.   *Wilson* v. *Greenwood*, 1

Swanston, 471; *Blakeney* v. *Dufaur*, 15 Beav. 40, 44. The costs will be paid in the first instance out of the funds in the hands of the receiver, but the court reserves the right to charge the costs upon the parties as it may think just and proper upon the coming in of the report.